**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

DIGITRAX ENTERTAINMENT, LLC,

                Plaintiff,

       -against-

UNIVERSAL MUSIC CORPORATION and
UNIVERSAL MUSIC PUBLISHING GROUP,

            Defendant.

Case No.  14 Civ. 00098 (PLR) (CCS)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF THE FACTS ............................................................................................... 2

ARGUMENT ............................................................................................................................ 9

I.    THE FIRST-FILED RULE SHOULD BE APPLIED TO ENJOIN
      UNIVERSAL'S DUPLICATIVE, LATER-FILED ACTION ......................................... 10

   A.  The First-Filed Rule Requires Adjudication of this Dispute in this Court ..................... 10

   B.  This Case Presents *None* of the Limited Exceptions to Justify a Departure from
       the First-Filed Rule .................................................................................................... 14

CONCLUSION ...................................................................................................................... 18

Case 3:14-cv-00098-PLR-CCS   Document 20   Filed 04/07/14   Page 2 of 23   PageID #: 441

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ..................................................................10

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004) ..................................................................17

*Broad. Music, Inc. v. Marler*,
  09-CV-193-SKL, 2009 U.S. Dist. LEXIS 106147 (E.D.Tenn. Oct. 26, 2009) .........................18

*Broad. Music, Inc. v. Mirage Images, Inc.*,
  04-CV-387-CLC, 2005 U.S. Dist. LEXIS 42880 (E.D.Tenn. Nov. 2, 2005) ...........................18

*Colo. River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ...............................................................................10

*Daimler-Chrysler Corp. v. General Motors Corp.*,
  133 F. Supp. 2d 1041 (N.D. Ohio 2001) ....................................................11

*Dumas v. Major League Baseball Props., Inc.*,
  52 F. Supp. 2d 1183 (S.D. Cal. 1999) .......................................................12

*Elite Physicians v. Citicorp*,
  06-CV-86-CLC, 2007 WL 1100481 (E.D. Tenn. April 11, 2007) ....................................11, 12

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998) ...........................................................16

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
  544 F. Supp. 2d 949, 960 (C.D. Cal. 2008) .................................................14, 16

*Malibu Boats, LLC v. Nautique Boat Co.*,
  No. 13-CV-656-TAV-HBG, 2014 U.S. Dist. LEXIS 6290 (E.D.Tenn. Jan. 16, 2014) ................................................................................10

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) ..............................................................16

*NGS Am., Inc. v. Jefferson*,
  218 F.3d 519 (6th Cir. 2000) ..................................................................17

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ...................................................................10

*Sea Gayle Music v. Johnson*,
   08-CV-1063-JDB, 2010 U.S. Dist. LEXIS 45420 (W.D. Tenn. May 10, 2010).......................18

*Smith v. M'Iver*,
   22 U.S. 532 (1824)................................................................................................................10

*Smith v. SEC*,
   129 F.3d 356 (6th Cir. 1997) ................................................................................................10

*Sony/ATV Music Publ'g, LLC v. KTS Karaoke, Inc.*,
   No. 3-12-0089, 2012 U.S. Dist. LEXIS 52825 (M.D. Tenn. Apr. 16, 2012) ...............14, 15, 17

*Spec Int'l, Inc. v. Patent Rights Prot. Group, LLC*,
   No. 08-CV-662-PLM, 2009 U.S. Dist. LEXIS 21619
   (W.D. Mich. Jan. 9, 2009) ..................................................................................11, 13, 14, 17

*Universal Music Corp., et al. v. DigiTrax Entertainment, LLC, et al.*,
   14-CV-2427-RSWL-JEM (C.D.Cal. Mar. 31, 2014)................................................................9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   No. 13-cv-01284-YGR, 2013 U.S. Dist. LEXIS 132218 (N.D. Cal. Sep. 13, 2013) ...............11

*Wynne v. Commemorative Air Force*,
   06-CV-122-TMR, 2006 U.S. Dist. LEXIS 60980 (S.D.Ohio Aug. 28, 2006)...........................14

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*,
   16 Fed. Appx. 433 (6th Cir. 2001)........................................................................................10

**Statutes**

Fed.R.Civ.P. 13(a) ......................................................................................................... 12

## PRELIMINARY STATEMENT

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff DigiTrax Entertainment, LLC ("DigiTrax") respectfully moves this Court for a temporary restraining order and an order enjoining Defendants, Universal Music Corporation and Universal Music Publishing Group (collectively, "Universal"), from attempting to divest this Court of its jurisdiction by maintaining a duplicative suit in the U.S. District Court for the Central District of California, which Universal filed nearly three weeks after DigiTrax commenced this action. DigiTrax filed its Complaint in this action for damages related to Universal's repudiation of its contract with DigiTrax, its breach of contract and for a declaration that DigiTrax did not infringe Universal's copyright. Approximately three weeks later, Universal brought an action in California for alleged copyright infringement that is based on the same license and facts that form the basis for DigiTrax's action in this Court. DigiTrax commenced this action first, and therefore Universal should be compelled to appear in this case and precluded from proceeding with its later-filed action.

By bringing its own action, Universal blatantly attempts to deprive this Court of its authority to resolve this matter despite the fact that there is no reason why this Court should not proceed with resolving the issues raised in DigiTrax's Complaint. The parties both have a presence in Tennessee and most of the facts at issue were actions taken by DigiTrax here in Tennessee. Moreover, the first-filed rule is both well-settled and controlling, and as the party who first brought this action in this Court, DigiTrax has rightfully selected this Court to resolve the question of whether Universal breached its obligations under a license that permitted DigiTrax to use Universal songs in DigiTrax's Karaoke Cloud Platform and Application. DigiTrax's lawsuit was not an anticipatory suit for the purpose of forum shopping, but rather the result of Universal's failure to engage DigiTrax in meaningful discussions to resolve issues

raised in its surprise e-mail repudiating the License. Accordingly, Universal should be restrained from sidestepping this Court with obvious forum shopping, and it should be enjoined from maintaining its identical, later-filed suit elsewhere.

## STATEMENT OF THE FACTS

DigiTrax's Business

DigiTrax is a premier karaoke company employing 15 people at its headquarters in Knoxville, Tennessee. (Declaration of Allen Jacobi, dated April 7, 2014 ("Jacobi Decl.) ¶ 5). DigiTrax brings interactive music, apps and products to the web, mobile, and social media. (*Id*.). Since 2012, DigiTrax has offered to its customers the Karaoke Cloud Platform and Application ("Karaoke Cloud"), a web-based streaming and download karaoke application, and its professional version, Karaoke Cloud Pro, geared toward the needs of karaoke show hosts. (*Id*.). DigiTrax aggregates and licenses the combined catalogs of sound recordings from third party producers, and also records karaoke versions of newly released music at its own recording studios, located in the foothills of the Great Smoky Mountains National Park. (*Id*.). DigiTrax offers tens of thousands of songs on its Karaoke Cloud Platform through its proprietary software application. (*Id*.).

In order to use the thousands of musical compositions embodied in its Karaoke Cloud Platform, DigiTrax licenses the rights to these songs from music publishers who own and/or administer the copyrights to the songs. (Jacobi Decl. ¶ 6). Pursuant to these license agreements, DigiTrax pays music publishers an advance and royalties for the right to have its users download or stream copyrighted songs through the Karaoke Cloud. (*Id*.). In addition to its license from Universal, DigiTrax is also a licensee of other major music publishing companies including Sony/ATV Music Publishing, Warner/Chappell Music, BMG, and scores of independent music publishers. (*Id*.).

<u>Universal As A Major Supplier of Compositions</u>

The largest of the major music publishers in the world, Universal is the global music leader with huge market positions in recorded music, music publishing, and merchandising. (*See* http://www.universalmusic.com/company). Universal's music publishing company, Universal Music Publishing Group, discovers and develops songwriters, and owns and administers copyrights to musical compositions for use in recordings, public performances, and related uses, such as films and advertisements. (*Id*.). Universal owns or administers more than one million copyrights and operates more than 47 offices in 41 countries. (*See* http://www.universalmusic.com/corporate/detail/419). Representing some of the most influential and legendary recording artists of the last 100 years, Universal has the most extensive catalog of music in the industry. (*See* http://www.universalmusic.com/company). Universal owns and administers its extensive catalog through a network of entities including Songs of Universal, Inc., Universal Polygram International Publishing, Inc., Universal – Songs of Polygram International, Inc., Universal Polygram International Tunes, Inc., Universal Music-MGB NA LLC, Universal Music – Z Tunes LLC, Rondor Music International, Inc., and Universal Musica, Inc. (*See* Declaration of Kent Klavens (Doc. 12). Collectively, these entities do business as "Universal Music Publishing Group," the second named defendant in this action.

<u>DigiTrax's License With Universal</u>

In September 2012, DigiTrax, through its counsel Mr. Allen Jacobi, initiated negotiations with Universal to secure a licensing agreement ("License") to permit DigiTrax's use of Universal's songs for DigiTrax's Karaoke Cloud, including DigiTrax's arrangements with VEVO, SBI, Mr. Entertainer, All-Star Karaoke, and Sunfly, and pending negotiations with Peavey, Yamaha, Ion Audio, Roland and iRig. (Jacobi Decl. ¶ 7). Throughout the months of September through December of 2012, DigiTrax and Universal negotiated the terms of the two-

year License by e-mail, which culminated on December 20, 2012. (*Id*. ¶ 8). In a December 20, 2012 e-mail from Mr. Grannis to Mr. Jacobi, Mr. Grannis confirmed terms of the license that governed DigiTrax's use of Universal songs. (*Id*. ¶ 10). Universal agreed to the following terms:

- A $20,000 advance;
- Royalties for DigiTrax's use of Universal songs;
- A two-year license term;
- Sandboxing, where "all files [were] to remain contained within the Karaoke Cloud software," and if music would not be contained on the Karaoke Cloud platform, DigiTrax "would notify [Universal] . . . and [Universal could] elect to participate";
- DigiTrax would account to Universal within 45 days of each quarter;
- The compositions that DigiTrax was permitted to use were subject to Universal's approval, and "Universal reserve[d] the rights to approve or deny specific compositions on a case by case basis";
- If Universal objects to the use of "any specific karaoke manufacturer's masters . . . , [DigiTrax was required] to remove [the] masters"; and
- Universal would provide DigiTrax with a more formal long-form license.

(*Id*.).

Universal assured DigiTrax that a draft of a long-form licensing agreement was underway. (*Id*. ¶ 11). In the same December 20, 2012 e-mail, Mr. Grannis stated to Mr. Jacobi, "[a]s a sign of good faith, *DigiTrax is free to use UMPG* [Universal Music Publishing Group] *compositions in the KaraokeCloud* [sic] *service as of today* while both sides work to execute [a] longform [license]." (*Id*. (emphasis added)). This, in addition to Universal explicitly agreeing to object to the use of "any specific karaoke manufacturer's masters" before requiring DigiTrax to remove them, set up the practice – observed by both parties for a year – where DigiTrax disclosed its activities subject to Universal's review and take down procedures. (*Id*.; *see also* Declaration of Toni Roberts, dated April 7, 2014 ("Roberts Decl.") ¶ 7-9). This applied to both DigiTrax's acquisition and use of sound recordings and to the services through which DigiTrax distributed content through the Karaoke Cloud. On or around February 20, 2013, DigiTrax paid Universal the sum of $20,000 in accordance with the License. (Jacobi Decl. ¶ 14).

Between February 2013 and January 2014, DigiTrax used thousands of songs approved by Universal in the Karaoke Cloud. (*Id.* ¶ 15). During this time, Ms. Toni Roberts, Licensing/Production Coordinator at DigiTrax, received bi-monthly e-mails from Mr. Grannis listing all approved additional songs for use in the Karaoke Cloud. (Roberts Decl. ¶ 6). By these e-mails Universal regularly notified DigiTrax, and its other licensees, of new songs which it authorized for karaoke. (*Id.*). Mr. Grannis would attach an Excel spreadsheet listing all new songs that Universal "approved for Karaoke." (*Id.*). On some occasions, Ms. Roberts would ask Mr. Grannis specific questions about clearances for particular songs. (*Id.* ¶ 7). For example, on August 22, 2013, Ms. Roberts and Mr. Grannis exchanged e-mails about clearances required for DigiTrax to use the song "I'm Going Down" by Mary J. Blige. (*Id.*). In another instance, between November and December 2013, Ms. Roberts – in compliance with the License – e-mailed Mr. Grannis to seek out his permission before adding songs to the Karaoke Cloud from a particular catalog known as the Sound Choice catalog. (*Id.* ¶ 8). When Mr. Grannis did not approve of the Sound Choice catalog, DigiTrax was sure to never add those songs to the Karaoke Cloud. (*Id.*). In reliance on these notifications, DigiTrax invested approximately $200,000 in recording karaoke versions of many Universal compositions for use under the License.

Universal continually acknowledged that it had a license with DigiTrax and referred to DigiTrax as its "licensee." (Jacobi Decl. ¶ 17; *see also* Roberts Decl. ¶ 10). In accordance with the License, DigiTrax provided quarterly, detailed accounting statements outlining its use of Universal compositions, which disclosed the sound recording catalogs DigiTrax aggregated and the customer services through which DigiTrax presented its software application to the public. (Jacobi Decl. ¶ 17). Universal was fully aware of all companies through which DigiTrax distributed the Karaoke Cloud and a listing of such companies were shown on DigiTrax's quarterly statements. (*Id.*). On a few occasions, Universal objected to DigiTrax allowing certain

companies to present access to the Karaoke Cloud and to DigiTrax including content from certain sources on the Karaoke Cloud. In addition to the Sound Choice refusal described above, Universal also declined to give DigiTrax the right to use Universal songs through DigiTrax's partnerships with VEVO and Roku. (*Id.* ¶ 19; *see also* http://www.youtube.com/user/KaraokeOnVEVO). Universal also objected to DigiTrax including songs from KJ Media in the Karaoke Cloud. (Jacobi Decl. ¶ 19). Despite attempting to help Mr. Grannis to understand, DigiTrax always cooperated by removing Universal songs whenever Mr. Grannis objected. (*Id.* ("As I pointed out, we will make sure that any deals we make, and there will be many, will be submitted to you and hopefully Universal's content will be included.").

The Karaoke Cloud Application, which is the exclusive portal for the Karaoke Cloud, was always used with DigiTrax branding, and no so-called "white label" service was provided to other companies. DigiTrax disclosed all of the services through which DigiTrax presented the Karaoke Cloud Service and cooperated if Universal objected. Over the many months of this course of dealing, DigiTrax repeatedly inquired about the status of a draft long-form license agreement to more formally memorialize the parties' existing relationship, and was met with repeated assurances that Universal was working on a draft, as well as apologies for its delay. (*Id.* ¶ 20).

Universal's Abrupt Accusations against DigiTrax

On February 21, 2014, DigiTrax received an unexpected e-mail from Mr. Kent Klavens, Senior Vice-President of Business and Legal Affairs at Universal. (*Id.* ¶ 21). Mr. Klavens had not been involved in the extensive body of communications and course of dealing between DigiTrax and Universal over the preceding year. (*Id.*). In his e-mail, Mr. Klavens, apparently ignorant of or willfully ignoring the history of DigiTrax's extensive dealings with Universal,

6

claimed that "no licensing agreement [had] been concluded" and that DigiTrax was "exploiting various recordings, apps and products that have never even been discussed as part of the license that was being negotiated [between DigiTrax and Universal]." (*Id*.).

Mr. Klavens further repudiated the License stating that his e-mail was "formal notice that [DigiTrax] must immediately discontinue any use whatsoever of any musical compositions owned or administered by any of [Universal's] music publishing entities throughout the world." (*Id*. ¶ 22). Mr. Klavens concluded by directing DigiTrax to "contact [him] without delay to discuss settlement of [Universal's] substantial copyright infringement claim against DigiTrax and their licensees" or else Universal would "not hesitate to retain litigation counsel to enforce [its] rights." (*Id*.). Despite being blindsided by Universal's accusations, DigiTrax promptly removed thousands of Universal's songs from its Karaoke Cloud. (*Id*.).

Mr. Jacobi attempted to speak with Mr. Klavens by phone, but Mr. Klavens stated that he would only deal with Mr. Jacobi by e-mail and abruptly hung up the phone. On Tuesday, February 25, 2014, Mr. Klavens sent another short e-mail again implying that DigiTrax had not been licensed to use Universal songs in its Karaoke Cloud, and threatened that DigiTrax would have to either "resolve this on a reasonable basis, or [Universal] will once again retain Paul Stacey (as we have for other cases) to pursue our claim far more aggressively and, for your clients, far more financially painfully." (*Id*. ¶ 23). The February 25, 2014 e-mail again failed to set out any basis for Universal's general claim. Mr. Klavens simply asserted that DigiTrax "has exposure to a likely multi-million dollar statutory damage award" and stated that he would "send you a detailed list and analysis of such illegal acts this week." (*Id*. ¶ 24). But, Universal failed to provide that information that week or at any time.

Instead, on February 27, 2014, Universal sent a draft Tolling Agreement, whereby the parties agreed to toll any limitations periods with respect to any potential claims. DigiTrax

signed and returned the Tolling Agreement.  Importantly, Universal's Tolling Agreement is silent on the question of any venue for litigation if the parties eventually were unable to resolve the dispute or any deadline by which litigation was threatened to commence.   Even after execution of the Tolling Agreement, however, Universal never contacted DigiTrax with the information that it promised regarding its alleged claims or attempted any good faith negotiations prior to DigiTrax's filing of the present action on March 12, 2014.

DigiTrax Suffers On-Going Damages and Files Suit

As a result of Universal's repudiation of the License and its failure to provide any detailed information about its alleged claims against DigiTrax, DigiTrax was left blind to understand any basis for Universal's aggressive actions.  (*Id.* 24-25, 28).  Since approximately February 21, 2014, DigiTrax complied with Universal's demand to remove and suspend thousands of Universal songs from its Karaoke Cloud.  (*Id.* ¶ 28).  Despite this, Universal for weeks *never* entered into any meaningful explanation of its actions, nor did it *ever* state any time table for the parties to discuss a resolution.  (*Id.* ¶ 27).

As a result of Universal's refusal to engage in good faith negotiations, and the damages DigiTrax continues to incur as a result of Universal's breach of the License, DigiTrax filed this action on March 12, 2014, nearly three weeks after receiving Universal's unilateral and unexplained demand on February 21, 2014.  DigiTrax seeks damages for Universal's bad-faith and unilateral breach of the License, and declaratory relief that DigiTrax did not commit copyright infringement.  (*See generally* Compl.).

As set forth in its complaint, DigiTrax suffers damages every single day that Universal refuses to honor the parties' valid and agreed-upon License.  After removing Universal's content from the Karaoke Cloud without any understanding of the substance behind Universals various threats, DigiTrax was left to offer far fewer songs for its Karaoke Cloud.  This has caused

financial harm in the form of fewer songs available to purchase and the lost revenue stream provided by thousands of Universal's songs, which Universal had licensed to DigiTrax for a two year period. As the License does not expire until December 20, 2014, DigiTrax's damages are on-going.

<u>Universal Files a Complaint in California Nearly Three Weeks into the Pendency of this Action</u>

Utterly ignoring this action, Universal waited three weeks after this case was initiated to file a mirror-image lawsuit in the U.S. District Court for the Central District of California. *See Universal Music Corp., et al. v. DigiTrax Entertainment, LLC, et al.*, 14-CV-2427-RSWL-JEM. Universal's only acknowledgement of this first-filed action[1] is buried on page 17 of its complaint. *See Universal Music Corp., et al. v. DigiTrax Entertainment, LLC, et al.*, 14-CV-2427-RSWL-JEM (C.D.Cal. Mar. 31, 2014) (Dkt. 1, Complaint) (hereinafter "Universal Compl."). Also, on Friday, April 4, 2014, on the eve of this application, Universal filed a motion to dismiss, transfer, and/or stay this action.

## ARGUMENT

This Court should follow the well-settled first-filed rule and enjoin Universal from prosecuting their later-filed, duplicative California action. Not one of the limited, special exceptions to the first-filed rule is present, or can withstand its presumptive application by this Court. Additionally, considerations of efficiency and the preservation of judicial resources also favor this Court's continued jurisdiction over this matter. Accordingly, Universal should be enjoined from maintaining a separate action in California.

---

[1] Though Universal only informed the U.S. District Court for the Central District of California that DigiTrax brought a "Declaratory Judgment Complaint" (Universal Compl. ¶ 48), it ignores DigiTrax's claims seeking a declaration of the validity and enforceability of the License, and seeking damages for breach of contract and of violations of the duty of good faith and fair dealing. This Court has jurisdiction over DigiTrax's Complaint based on diversity of citizenship and because it implicates federal questions related to the Copyright Laws of the United States. (*See* Compl. ¶¶ 10-12).

# I. THE FIRST-FILED RULE SHOULD BE APPLIED TO ENJOIN UNIVERSAL'S DUPLICATIVE, LATER-FILED ACTION

Perhaps the earliest pronouncement of the first-filed rule was when Chief Justice Marshall held, "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 22 U.S. 532, 535 (1824). Over a century later, the Supreme Court explained the rule's purpose is to "avoid duplicative litigation." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). Likewise in the Sixth Circuit, the first-filed rule is recognized as "well-established doctrine that encourages comity among federal courts of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001).[2] Sitting *en banc*, the Sixth Circuit has held that when a "federal court is presented with such a duplicative suit, it may . . . enjoin the parties from proceeding in the other suit." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). As set forth below, Universal should be enjoined from maintaining its later-filed, duplicative action.

## A. The First-Filed Rule Requires Adjudication of this Dispute in this Court

Just three months ago, Chief Judge Varlan noted "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Malibu Boats, LLC v. Nautique Boat Co.*, No. 13-CV-656-TAV-HBG, 2014 U.S. Dist. LEXIS 6290, at *6 (E.D.Tenn. Jan. 16, 2014) (internal citations omitted). Courts use three factors to determine whether the first-filed rule warrants disposition of a case: (1) chronology of the actions; (2) similarity of the parties involved; and (3) similarity of the issues at stake. *Id*. at *7. When considering these factors, a court should be mindful that "[t]he parties and claims in the two actions need not be identical; there need be only

---

[2] So too is the first-filed rule controlling in the Ninth Circuit, where Universal brought suit. *See, e.g.*, *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("The federal 'first to file rule' is a doctrine permitting a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.).

substantial overlap for the actions to be duplicative and thus to implicate the first-to-file rule."
*Spec Int'l, Inc. v. Patent Rights Prot. Group, LLC*, No. 08-CV-662-PLM, 2009 U.S. Dist. LEXIS
21619, at *9-10 (W.D. Mich. Jan. 9, 2009) (internal citation omitted).

First, there is no dispute that Universal filed its duplicative lawsuit weeks after DigiTrax
initiated this action. The first-filed rule controls no matter how brief the interval between filings.
*See Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1043-44 (N.D.
Ohio 2001) (where only 12 minutes elapsed between filings, the court nevertheless reasoned,
"[l]eaving the decision of the first to file dispute to the court in which the first case was filed
makes good sense" staying the proceedings in favor of a first-filed declaratory action).

There is also no dispute that the parties to both actions are the same, except Universal's
duplicative lawsuit ignores the details of the License between the parties and their extensive
course of dealing, which are present here. *See Wallerstein v. Dole Fresh Vegetables, Inc.*, No.
13-cv-01284-YGR, 2013 U.S. Dist. LEXIS 132218, at *13 (N.D. Cal. Sep. 13, 2013) ("Courts
have held that the first-to-file rule does not require strict identity of the parties, but rather
substantial similarity."). Though Universal brings its action in the names of its individual related
entities and against two individuals connected to DigiTrax, the parties to the litigations are
similar enough to satisfy the mere "substantial overlap" as required by the first-filed rule. *See
Elite Physicians v. Citicorp*, 06-CV-86-CLC, 2007 WL 1100481, at *3-4 (E.D. Tenn. April 11,
2007) (reasoning that privity, affiliation, or control by the same parent entity satisfy the
"substantial overlap" test required by the first-filed rule). Although Universal listed more
entities in its complaint in the Central District of California, the same parties are involved in
DigiTrax's action here because Universal owns and administers its extensive catalog through a
network of entities including those listed in its complaint in the Central District of California:
Universal Music Corporation (named in both complaints), Songs of Universal, Inc., Universal

Polygram International Publishing, Inc., Universal – Songs of Polygram International, Inc.,

Universal Polygram International Tunes, Inc., Universal Music-MGB NA LLC, Universal Music

– Z Tunes LLC, Rondor Music International, Inc., and Universal Musica, Inc. All of these

entities admittedly do business under the name "Universal Music Publishing Group" [CITE

KLAVEN AFF'T] which is the second named defendant herein. The other two parties listed as

defendants in Universal's complaint in the Central District of California – Allen Jacobi and

Joseph Vangieri – are agents of DigiTrax. Mr. Vangieri is a DigiTrax executive at the

Knoxville, Tennessee headquarters, and Mr. Jacobi provides legal services to DigiTrax from his

offices in Miami, Florida, which are much closer to this Court than California. Therefore, the

fact that the same parties are named in both suits favors the application of the first-filed rule.

 With regard to similarity of issues, even a cursory examination of the parties' complaints

reveals the issues to be identical. In short, DigiTrax seeks damages for Universal's unilateral

and unwarranted breach of the License and a declaration that the License is valid and

enforceable, and therefore that DigiTrax is not liable for copyright infringement. *See* Compl.

¶ 1. Universal's complaint in California claims that the License did not exist or that its extent

was somehow limited, and as a result, DigiTrax's allegedly unauthorized use of Universal's

compositions constitutes copyright infringement.[3] *See* Universal Compl. ¶¶ 3-7. On their face,

the complaints reveal the underlying facts and legal issues are more than substantially similar.

*See Elite Physicians*, 2007 WL 1100481, at *3 n. 1 ("Issues are substantially similar if the

overall content of each suit is not very capable of independent development.") (internal citation

omitted); *Dumas v. Major League Baseball Props., Inc.*, 52 F. Supp. 2d 1183, 1193 (S.D. Cal.

1999) ("[T]he 'first-to-file' rule is satisfied by a sufficient similarity of issues."). Discovery will

only reinforce this point as well. Moreover, because DigiTrax is seeking damages for

---

[3] Without addressing Universal's baseless allegations, at best, they belong as counterclaims in this action, not in a separate suit in California. *See* Fed.R.Civ.P. 13(a).

Universal's breach, which is related to the question of DigiTrax's use of Universal's copyrighted songs, this Court should hear this case first and Universal should be enjoined from pursuing its later-filed action in California. *See Spec Int'l, Inc*., No. 08-CV-662-PLM, 2009 U.S. Dist. LEXIS 21619, at *9-10 (W.D. Mich. Jan. 9, 2009) (finding that substantial overlap for the actions to be duplicative and thus to implicate the first-to-file rule). Thus, as the issues to be decided are entirely duplicative, the first-filed rule is controlling.

In addition, this Court is the best venue for this dispute. DigiTrax is located in this district and all of its employees, include decision-makers with knowledge of the License negotiations, are located here. Testimony from these employees will be relevant to the existence and terms of the License. DigiTrax offered its services, including Universal's songs, from Tennessee. The Karaoke Cloud was developed in Tennessee, and all DigiTrax employees knowledgeable about its operation are located in Tennessee. Such information is relevant to DigiTrax's legal use of Universal's songs. The vast bulk of evidence related to the Karaoke Cloud and DigiTrax's offerings of music, including Universal's songs when they were available, is located in Tennessee. As the party that filed first in this Court, DigiTrax has appropriately asked this Court to adjudicate Universal's repudiation of the License.

Without first addressing its burden to establish before this Court that the Central District of California is more convenient than the Eastern District of Tennessee, Universal simply filed a duplicative lawsuit in its preferred forum, raising identical legal issues against identical parties that arise from identical operative facts.[4] As instructed by the Sixth Circuit and others, this Court should enjoin Universal from further prosecution of its later-filed, identical action.

---

[4]     As indicated above, on the eve of the filing of this application, Universal has filed a motion here to dismiss, stay, and/or transfer this action. Although most of the issues raised in Universal's motion are addressed in this application, DigiTrax intends to submit a formal response to Universal's motion on an expedited basis to allow the Court to consider both motions simultaneously.

**B.** **This Case Presents *None* of the Limited Exceptions to Justify a Departure from the First-Filed Rule**

As set forth above, well-settled precedent demands a strong presumption in favor of hearing all actions in the first-filed forum. A party opposing the application of the first-filed rule bears the burden to show special circumstances exist to depart from this doctrine. *See Spec Int'l*, 2009 U.S. Dist. LEXIS 21619, at *11-12. Accordingly, Universal must demonstrate that "rare or extraordinary circumstances, inequitable conduct or forum shopping" prevent application of the first-filed rule. *Wynne v. Commemorative Air Force*, 06-CV-122-TMR, 2006 U.S. Dist. LEXIS 60980, at *4 (S.D.Ohio Aug. 28, 2006). But, none of these rarities exist.

The facts of this case preclude any allegation that DigiTrax acted in bad faith or filed an anticipatory suit. *See Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 960 (C.D. Cal. 2008) ("A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent."). DigiTrax received an e-mail from Mr. Klavens conclusorially and wrongly alleging copyright infringement and seeking unspecified compensation. (Jacobi Decl. ¶ 21-28). After that initial contact, *weeks* went by and despite DigiTrax's repeated request for more information and attempts to engage Universal in a meaningful discussion of the issues, Mr. Klavens failed to provide *any* additional detail regarding Universal's claims. (*Id.*). In the meantime, DigiTrax had removed Universal content from the Karaoke Cloud as a result of Mr. Klavens' demand. (*Id.*). Rather than continue to sustain damages from Mr. Klavens' repudiation of the License while Universal refused to even attempt to justify its actions, DigiTrax brought this action. DigiTrax's decision to sue and seek declaratory relief is not evidence of DigiTrax attempting to forum shop or out-maneuver Universal. *See Sony/ATV Music Publ'g, LLC v. KTS Karaoke, Inc.*, No. 3-12-0089, 2012 U.S. Dist. LEXIS 52825, at *6 (M.D. Tenn. Apr. 16, 2012) ("With regard to the anticipatory lawsuit

argument, a party has the right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity, it will be sued by another party."). This was no "race to the courthouse" by a stranger infringer who has been threatened by a copyright holder with imminent litigation.

Courts will carefully examine the circumstances before considering usurping the jurisdiction of a first-filed action which contains a claim for declaratory relief. In *Sony/ATV Music Publ'g, LLC v. KTS Karaoke, Inc.*, plaintiff who was based in Tennessee sent defendants correspondence claiming defendants were liable for copyright infringement and "offering to settle their potential claims." 2012 U.S. Dist. LEXIS 52825, at *2. Defendants brought an action in California, and after plaintiff's brought a second suit in Tennessee, defendants moved to dismiss the Tennessee action or transfer it to the California where the first-filed suit was pending. *Id.* The court examined the correspondence sent by plaintiff to defendants, which included numerous indications that plaintiffs wished to *avoid* litigation, not that they were threatening litigation. *Id.* at *7. For example, one of plaintiff's letters stated that counsel was authorized to initiate "what will hopefully be a successful resolution process of their [plaintiffs'] claims without instituting litigation." *Id.* The Court ultimately granted Defendants' request and ruled that the first-filed action in California was proper and should prevail over the later-filed Tennessee action. As here, no deadline for the commencement of litigation had been made by the second filer.

Here, Universal sent similar correspondence to DigiTrax claiming liability for copyright infringement and asking for settlement of Universal's claims. (Jacobi Decl. ¶ 21-28). But DigiTrax did not file this case in an effort to preempt an action by Universal; rather, at no point prior to the filing of the Tolling Agreement did Universal reveal any the underlying details of its

potential claims, or give any deadline by which it would file suit if a resolution could not be reached, or any indication of where such a suit would be filed.

As discussed above, from the receipt of Mr. Klavens' surprise e-mail repudiating the License and demanding the removal of Universal compositions on February 21 2014 until DigiTrax's filing of this action nearly three weeks later, Universal never provided DigiTrax with a coherent explanation of its claims, nor did it state any timetable for meaningful negotiations or for litigation. (*Id*. ¶ 21-28). Although it submitted a Tolling Agreement, it contained *no* provision for the venue of any litigation, which might ensue, and contained no deadline regarding negotiation of a resolution of the parties' differences. (*Id*. ¶ 26-28). Despite its good faith effort to discuss the issues with Mr. Klavens and its continuing damage as a result of Universal's repudiation, DigiTrax was still met with radio silence, without even a hint of an effort to resolve these issues without the necessity of litigation. (*Id*. ¶ 29-30). Without overt threats of litigation or the commencement of settlement negotiations, this action cannot be considered anticipatory to Universal's suit.

DigiTrax's Complaint, although containing a request for declaratory relief, is not anticipatory or the result of DigiTrax attempting to undercut Universal by obtaining jurisdiction in a particular forum. *See, e.g.*, *Intersearch Worldwide, Ltd.*, 544 F. Supp. 2d at 960-61 ("[A] reasonable apprehension that a controversy exists sufficient to satisfy the constitutional requirements for a declaratory judgment action *is not equivalent* to an imminent threat of litigation." (emphasis added)); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005) ("While there undoubtedly was a reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment action, *this is not equivalent* to an imminent threat of litigation." (emphasis added)); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998) (finding that a letter

suggesting the possibility of legal action in order to encourage or further a dialogue is not a specific, imminent threat of legal action).  Indeed, Universal forced DigiTrax's hand by repudiating the License, damaging DigiTrax's bargained-for rights, and refusing to engage in *any* meaningful efforts to resolve the dispute.

Just as Sony/ATV was precluded from bringing its second action in *Sony/ATV Music Publ'g, LLC*, Universal should be precluded from litigating its later-filed action in California.  Despite its knowledge that this Court was presiding over DigiTrax's claims, Universal nevertheless failed to appear in this action before it brought suit in California three weeks later.[5]  Moreover, DigiTrax included a claim for breach of contract and good faith and fair dealing, which is not a request for declaratory relief and a claim that DigiTrax is entitled to pursue in this Court where it filed its action first.  In light the above, it cannot be said that DigiTrax acted inequitably or in bad faith so as to justify a departure from the presumptive first-filed rule.

There are also no "sound reasons that would make it unjust or inefficient" to continue this first-filed action in this Court.  *See Spec Int'l*, 2009 U.S. Dist. LEXIS 21619, at *11.  Prosecution of this action in this district is conducive of efficiency, and maintaining one action permits a comprehensive resolution of the parties' claims without the specter of inconsistent adjudications from multiple forums.  DigiTrax is located in this district and all of its employees, include decision-makers with knowledge of the License negotiations, are located here.  Testimony from these employees will be crucial to the existence and terms of the License.  DigiTrax offered its services, including Universal's songs, from Tennessee.  The Karaoke Cloud was developed in Tennessee, and all DigiTrax employees knowledgeable about its operation are located in

---

[5]   DigiTrax is certainly the "natural plaintiff" for its breach of contract claims.  *See AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) ("Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.").  On the same point, DigiTrax is more than just a declaratory  plaintiff – DigiTrax is asking this Court to find Universal liable for repudiating and breaching the License.  *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 521 (6th Cir. 2000) (ruling against plaintiff only seeking declaratory relief on issue of whether plaintiff's complaint was an attempt at procedural fencing).

Tennessee. Such information is relevant to DigiTrax's legal use of Universal's songs. As the party that filed first in this Court, DigiTrax has appropriately asked this Court to adjudicate Universal's repudiation of the License and the Eastern District of Tennessee is the appropriate forum for this dispute.

Furthermore, Universal cannot claim it is ill-equipped or unable to defend this action in this district. Not only does it operate on a worldwide basis in the music industry, but it has strong ties to, and maintains offices in, Tennessee. *See* http://www.umgnashville.com/ & http://www.umpgnashville.com/. Nor are Universal entities unfamiliar with prosecuting actions in the Eastern District of Tennessee, or with availing themselves of jurisdiction here. *See, e.g. Broad. Music, Inc. v. Marler*, 09-CV-193-SKL, 2009 U.S. Dist. LEXIS 106147 (E.D.Tenn. Oct. 26, 2009); *Broad. Music, Inc. v. Mirage Images, Inc.*, 04-CV-387-CLC, 2005 U.S. Dist. LEXIS 42880 (E.D.Tenn. Nov. 2, 2005); *see also Sea Gayle Music v. Johnson*, 08-CV-1063-JDB, 2010 U.S. Dist. LEXIS 45420 (W.D. Tenn. May 10, 2010).

The facts demonstrate that DigiTrax filed suit in the correct forum, brought all the necessary parties together, and seeks to fully and finally resolve the parties' common issues, and eliminate any uncertainties with respect to the parties' contractual relationship. As Universal is unable to demonstrate that any of the limited, special circumstances exist so as to avoid the application of the first-filed rule, this Court has firm grounds to enjoin Universal's later-filed, duplicative suit.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests this Court grant its Motion for Anti-Suit Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Dated: April 7, 2014                                    Respectfully submitted,

*/s/ W. Edward Shipe*
John A. Lucas (011198)
W. Edward Shipe (023887)
WAGNER, MYERS & SANGER, P.C.
1801 First Tennessee Plaza
800 S. Gay Street
P.O. Box 1308
Knoxville, TN 37901
T: (865) 525-4600
F: (865) 524-5731
jlucas@wmspc.com
eshipe@wmspc.com


Paul V. LiCalsi (*pro hac vice*)
Shane St. Hill (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
601 Lexington Avenue, Suite 3400
New York, New York 10022
T: (212) 980-7400
F: (212) 980-7499
pvlicalsi@rkmc.com
ssthill@rkmc.com

**Attorneys for DigiTrax Entertainment, LLC**



## CERTFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served

electronically.  Notice of this filing will be sent by operation of the Court's electronic filing

system to all parties indicated on the electronic filing receipt on this 7th day of April, 2014.


*/s/ W. Edward Shipe*