DIGITRAX ENTERTAINMENT, LLC,          )
                                      )
      Plaintiff,                    )
                                      )
v.                                    )  No.: 3:14-CV-98-PLR-CCS
                                      )
UNIVERSAL MUSIC CORPORATION and       )
UNIVERSAL MUSIC PUBLISING GROUP,      )
                                      )
      Defendants.                   )

## MEMORANDUM OPINION

This civil action is before the court on the motion to dismiss, stay, or transfer filed by Defendant, Universal Music Corporation. Plaintiff, DigiTrax Entertainment, LLC, opposes the motion. DigiTrax has also filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin Universal from proceeding with litigation in the Central District of California. Oral argument on the motions was heard on April 30, 2014. The court has thoroughly considered the arguments of the parties, the relevant documents and exhibits, and the controlling law. For the reasons which follow, Universal's motion will be granted and this case will be dismissed.

## I. Background

Universal consists of music publishers that collectively own or control the copyrights to many musical compositions. DigiTrax proclaims itself to be "America's Premier Karaoke Company" with "a massive catalog of more than 17,000 songs featuring

decades of the biggest hits in the music world." DigiTrax states on its website that it is "the only company based in the USA delivering fully licensed digital karaoke for streaming and download."

In 2012, DigiTrax entered into negotiations for a license with Universal to publicly perform (via streaming digital transmission) recordings of Universal's musical compositions to "karaoke jockeys" via a "karaoke cloud." DigiTrax's karaoke cloud was intended to aggregate a collection of karaoke recordings in a single remote location, which then would be offered by DigiTrax to karaoke jockeys or members of the public, who paid a monthly subscription fee. In order to use the thousands of musical compositions embodied in its karaoke cloud, DigiTrax licensed the rights to these songs from music publishers who own and/or administer the copyrights to the songs.

Universal permitted DigiTrax to use Universal's works, subject to a number of specific limitations, while a long-form licensing agreement was being negotiated. On February 20, 2013, DigiTrax paid Universal the initial sum of $20,000 in accordance with the parties' agreement. Universal avers that DigiTrax and its owners/officers ignored the terms of the limited permission, and engaged in widespread exploitation of Universal's copyrighted works outside the scope of the contemplated license. Though DigiTrax was only permitted by Universal to publicly perform and distribute karaoke recordings to its own end-user customers, DigiTrax instead built a database of karaoke recordings in an effort to become a "one-stop" shop for a variety of other businesses to offer karaoke recordings to their customers. Universal asserts this business model was never contemplated by the parties and would have involved negotiation of a completely

2

different type of license or business relationship. In addition, Universal asserts that DigiTrax knowingly added to its karaoke cloud hundreds of karaoke recordings that were unlawfully created and supplied by third-party manufacturers, in violation of the limited permission granted. Therefore, Universal claims that DigiTrax's conduct, and the conduct of its owners/officers, represented copyright infringement and deprived Universal of substantial licensing fees.

On February 21, 2014, Kent Klavens, Senior Vice President of Business and Legal Affairs for Universal, notified DigiTrax, in writing, that DigiTrax had engaged in copyright infringement by using Universal compositions outside the scope of the proposed license, and would be willfully infringing Universal's copyrights by any continuing use of Universal's compositions. Klaven requested that DigiTrax contact him to discuss settlement, and demanded that DigiTrax cease use of Universal's compositions during that process.

After further communications with DigiTrax to discuss a non-judicial resolution of the dispute, a Tolling Agreement was entered into by the parties on March 3, 2014. The Tolling Agreement states that "Universal is contemplating bringing claims against DigiTrax regarding DigiTrax's exploitation of works incorporating musical compositions owned or controlled, in whole or in part, by Universal (the "Universal claims")." DigiTrax agreed that "DigiTrax . . . [is] willing to enter into this Agreement to toll any statutes of limitations and other equitable defenses, including laches, that would impose deadlines for the filing of any of the Universal claims against DigiTrax arising out of or concerning any litigation that may yet be instituted." The parties agreed that the Tolling

3

Agreement "serves the mutual interests of [the parties] in allowing time for matters to be resolved in an effort to avoid litigation." By its terms, the Tolling Agreement remained in effect until June 30, 2014.

Seven business days later, DigiTrax filed its declaratory judgment complaint in this court on March 12, 2014, without notice to Universal. After service of the lawsuit filed by DigiTrax in Tennessee, Universal filed a lawsuit against DigiTrax and its owners/officers for copyright infringement in the Central District of California on March 31, 2014, styled *Universal Music Corp. et al. v. DigiTrax Entertainment LLC, et al.,* Civil Action No. 2:14-CV-02427.

Universal moves to dismiss the declaratory judgment complaint filed by DigiTrax, pursuant to 28 U.S.C. § 2201(a). In the alternative, Universal moves to transfer this action to the Central District of California, where the affirmative copyright infringement action, is pending, under 28 U.S.C. § 1404(a); and/or stay this action until final disposition of the California litigation.

DigiTrax has filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin Universal from proceeding with the California litigation. DigiTrax contends that Universal wrongfully suspended DigiTrax's two-year license to use Universal songs, denied the existence of the license, made vague and sweeping allegations of copyright infringement, and then failed to engage in any discussion of the content of its claims, or in any settlement negotiation. Therefore, DigiTrax argues it properly filed this action to clarify its contractual rights and to seek damages against Universal, in addition to seeking a declaration that it has not infringed on Universal's

4

copyrights. DigiTrax states that approximately 38% of all songs offered on its karaoke cloud were Universal songs, and Universal's cease-and-desist demand continues to materially disrupt DigiTrax's operations and service to its customers. DigiTrax seeks damages for Universal's breach of its duty of good faith and fair dealing, unilateral breach of the license, declaratory relief that DigiTrax's license is valid and enforceable, and a declaration that it did not commit copyright infringement. DigiTrax further asserts that Universal's motion to dismiss should be denied under the first-to-file rule.

## II. Analysis

### A. Appropriateness of Declaratory Relief

Universal asserts this court should decline to exercise jurisdiction over this action under the Declaratory Judgment Act because Digitrax's complaint is merely a preemptive, anticipatory proceeding, and there is a parallel proceeding, with all necessary claims and parties, pending in a more appropriate forum, the Central District of California.

Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory. *Brillhart v. Excess Ins. Co. of Amer.,* 316 U.S. 491, 494-95 (1942). The Declaratory Judgment Act confers broad discretion on the court whether to entertain an action, even when the suit would otherwise satisfy jurisdictional prerequisites. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). The district court's determination to stay or dismiss a declaratory action in favor of a parallel, pending proceeding involves an examination of, among other things, "the scope of the pending . . . proceeding and the nature of defenses open there." *Brillhart,* 316 U.S. at 495.

The Sixth Circuit has adopted a five-factor test for determining whether a district court should exercise jurisdiction over a declaratory judgment action:

1. whether the judgment would settle the controversy;

2. whether the declaratory judgment action would serve a useful purposed in clarifying the legal relations at issue;

3. whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*;

4. whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

5. whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale,* 386 F.3d 763, 785 (6th Cir. 2004). In addition, "a party's intention to preempt another's patent infringement suit may be considered in ruling on a dismissal of a declaratory action, but a court must also consider the other factors." *Foundations Worldwide Inc. v. Oliver & Tate Enters. Inc.,* 2013 WL 4054636 at *3. (N.D. Ohio Aug. 12, 2013).

The first factor does not weigh in favor of allowing or dismissing DigiTrax's declaratory judgment action. A determination of whether a judgment would settle the controversy entails consideration of "whether the claims of all parties in interest can be satisfactorily adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amendable to process in that proceeding, *etc.*" *Wilton,* 515 U.S. at 283. Generally, the first factor is significant "when a federal declaratory judgment action concerns only a small part of, or differs substantially from, the [parallel] suit or

6

fails to include all of the parties who have a stake in the litigation." *Keiser Land Co. Inc. v. Naifeh*, 2010 WL 3220642 at *3 (W.D. Tenn. Aug. 13, 2010).

DigiTrax's action is primarily one for a declaratory judgment that it has not engaged in copyright infringement by including Universal's songs on its karaoke cloud, pursuant to the terms of an enforceable license. In the California litigation, Universal has raised claims for copyright infringement, contributory copyright infringement, and vicarious copyright infringement against DigiTrax and the owners/officers of DigiTrax who personally participated in and financially benefitted from DigiTrax's infringing activities. There is no dispute that the two cases arise from the same nucleus of facts: whether a license agreement existed between the parties, the scope of any such license, and whether DigiTrax's use of Universal's compositions exceeded the scope of any license and, therefore, constituted copyright infringement. The general substance of both actions is related, and the claims and parties similar, so this factor does not favor either party.

Second, the court must consider "whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue." *AmSouth,* 386 F.3d at 785. Though DigiTrax contends that a declaratory judgment would be useful in the sense that it would resolve the issue of infringement, "declaratory judgments do not serve a useful purpose where there is a pending coercive action, filed by the natural plaintiff, which encompass all of the same issues as the declaratory judgment action." *Foundations Worldwide Inc.,* 2013 WL 4054636 at *3. Where a putative defendant files a declaratory action "whose only purpose is to defeat liability in a subsequent coercive

7

suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff his or her choice of forum – a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth Bank,* 386 F.3d at 788. The California action contains all the necessary claims and parties to resolve this controversy. Therefore, the court finds that this factor weighs in favor of dismissal.

Third, the court must analyze whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*." *Id.* at 785. While the second factor addresses the futility of a declaratory remedy, this factor focuses on the motivation behind it. The Sixth Circuit has stated:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit.

*AmSouth,* 386 F.3d at 788.

"The issue of bad faith arises when the declaratory plaintiff somehow misled the defendant into believing that no declaratory judgment would be filed, or that settlement negotiations were ongoing." *Keiser Land Co. Inc. v. Naifeh*, 2010 WL 3220642 at *4 (W.D. Tenn. Aug. 13, 2010). Here, Universal and DigiTrax began engaging in settlement discussions after Universal provided formal notice of its copyright infringement claims to DigiTrax on February 21, 2014. As part of these discussions, the parties executed a Tolling Agreement specifically to allow the parties to attempt to resolve the dispute and

8

to avoid litigation during settlement discussions. DigiTrax voluntarily signed the Tolling Agreement as part of settlement negotiations. The Tolling Agreement obviated the need for any party to commence litigation. Only seven business days after DigiTrax signed the Tolling Agreement with knowledge of the copyright infringement claims asserted by Universal, DigiTrax filed it declaratory judgment complaint in this court without any notice to Universal. Instead of honoring the letter and spirit of the Tolling Agreement and allowing settlement negotiations to proceed, DigiTrax raced to the court in an effort to secure its preferred forum. "When a declaratory judgment action is filed within the response period provided in recent cease-and-desist letter, it may be found that the plaintiff acted in bad faith." *Aeroflex,* 2014 WL 652912 at *4.

Moreover, "the Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." *Id.* The circumstances in *Internet Transaction Solutions Inc. v. Intel Corp.,* 2006 WL 1281654 (S.D. Ohio May 8, 2006) were similar to those here.

> Accordingly to Intel, ITS improperly anticipated Intel's filing of a trademark infringement action and raced to the courthouse to litigate the claims in a forum it viewed as more favorable, and to obtain a procedural and negotiating advantage. Instead of responding to Intel's cease-and-desist letter inviting settlement discussions, ITS, just prior to the response deadline set by Intel, filed this declaratory judgment action. Intel argues that, under these circumstances, it would be contrary to public policy for the court to exercise its discretion to decide ITS's declaratory judgment action. Intel argues that this would only encourage natural plaintiffs to sue first and talk later in order to preserve their choice of forum.

9

*Id.* at *4. Despite acknowledging that ITS did not engage in misleading conduct, the court found that "when a declaratory judgment action is filed within the response period provided in a recent cease-and-desist letter, it may be found that the plaintiff acted in bad faith." *Id.* at *7. The court further stated that public policy militated in favor of dismissal because "agreeing to exercise jurisdiction over the declaratory judgment action, under these circumstances, would encourage trademark holders to immediately file trademark infringement actions without first attempting to resolve the dispute short of litigation." *Id.* Moreover, in response to plaintiff's argument that it logically filed its action in its home forum and did not shop for a favorable forum, the court noted:

> Whether the forum chosen by the declaratory plaintiff is "logical" can have only a minimal value in determining whether procedural fencing has occurred. The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get his or her choice of forum by filing first.

*Id.* (*quoting AmSouth Bank,* 386 F.3d at 789). Under the circumstances, the court answered that question in the affirmative and held that the third factor weighed heavily against exercising jurisdiction. *Id.*

Here, the Tolling Agreement establishes that the parties were interested in exploring settlement of Universal's claims, which, in turn, gave Universal reason to believe that it could continue negotiating with DigiTrax rather than having to immediately file its copyright infringement complaint in the Central District of California. Universal is the natural plaintiff in a copyright infringement action, and it was attempting to resolve this dispute without litigation. To find that this factor weighs in favor of exercising jurisdiction would discourage attempts at settlement and "wave the

10

checkered flag in front of races to the courthouse." *Aeroflex USA Inc. v. Armacell Enter. GMBH,* 2014 WL 652912 at *5 (E.D. Tenn. Feb. 20, 2014). Moreover, public policy dictates that parties be able to freely engage in settlement negotiations in an effort to avoid the time and expense of litigation. *See AmSouth,* 386 F.3d at 788. In light of the foregoing discussion, the court finds that the third factor weighs heavily against the court exercising jurisdiction over DigiTrax's action.

The fourth factor, whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction, is inapplicable because both pending actions were filed in federal district courts.

Finally, the court must consider "whether there is an alternative remedy that is better or more effective." *AmSouth Bank,* 386 F.3d at 785. Universal submits the California action is a much more effective venue for resolving this matter, while DigiTrax states that California is an unsuitable venue, and that Universal could bring their pending claims in the Tennessee action as counterclaims in this action. Clearly, it would be a waste of judicial resources to litigate this dispute in more than one forum. The question in these circumstances "is not the order in which the actions were filed, but which action will better serve the needs and convenience of the parties." *Foundations Worldwide Inc.,* 2013 WL 405636 at *4.

When faced with similar circumstances, the Sixth Circuit has noted "the existence of a coercive action is important to our determination that this declaratory action would serve no useful purpose." *AmSouth Bank,* 386 F.3d at 791. This court agrees that the broader, coercive action filed in California will provide a more effective venue for

resolving this matter in its entirety. The Tolling Agreement establishes that the parties were interested in exploring settlement of Universal's claims, prior to engaging in litigation. The court finds that DigiTrax's "procedural fencing" and "forum shopping" weigh heavily in favor of declining jurisdiction over this action. In addition, the broader coercive action filed in California includes all of the necessary parties, and can provide a more effective venue for resolving his matter in its entirety. All of this weighs in favor of the court declining to exercise jurisdiction over this action in favor of the coercive action pending in the Central District of California.

### B. First-to-File Rule

DigiTrax argues that the first-to-file doctrine favors this court exercising jurisdiction over its declaratory judgment action, while Universal contends that this matter falls within an exception to this general rule. The Sixth Circuit has stated:

> The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, "the court in which the first suit was filed should generally proceed to judgment."

*Zide Sport Shop of Ohio Inc.,* 16 Fed. Appx. 423, 437 (6th Cir. July 31, 2001). However, district courts have the discretion to dispense with the first-to-file rule when equity so demands. A plaintiff, even one who files first, does not have an absolute right to bring a declaratory judgment action in the forum of his or her choosing, and factors that weigh against enforcement of the first-to-file rule include "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.*

12

Moreover, the first-to-file rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action. *See AmSouth Bank,* 386 F.3d at 791. In fact, cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit. *Id.* This exception to the first-to-file rule will be applied "where the parties and issues are the same, or essentially so, and it appears that the first filed suit was brought in anticipation of a forthcoming suit by the substantive plaintiff." *UAW v. Dana Corp.,* 1999 WL 33237054 at *6 (N.D. Ohio Dec. 6, 1999).

The court finds this presumption in favor of discarding the first-to-file rule applies in this case. DigiTrax's Complaint states, in the very first paragraph, that "DigiTrax brings this complaint seeking declaratory relief because Universal has <u>threatened it with litigation</u>, claiming copyright infringement of Universal's copyrighted content used in DigiTrax's Karaoke Cloud Platform." (emphasis supplied). Thus, there is no dispute that DigiTrax knew that Universal asserted copyright claims against it. DigiTrax also knew litigation was certainly imminent if the parties could not reach a non-judicial resolution of the dispute. Universal was led to believe, through DigiTrax's execution of the Tolling Agreement, that it did not have to immediately institute litigation.

The court acknowledges that the three-part test normally used in determining whether to apply the first-to-file rule counsels in favor of exercising jurisdiction over this action, given that DigiTrax's declaratory judgment action was filed first and involves

13

similar parties and issues as the California action. Yet, the case law makes clear that when faced with a declaratory judgment action and a coercive suit concerning the underlying issues, the presumption is in favor of dismissing or staying the declaratory action. Thus, the instant matter presents an exception to the general case that would be evaluated under the three-part test.

DigiTrax submits that this court's holding in *Malibu Boats LLC v. Nautique Board Company Inc.,* 2014 WL 202379 (E.D. Tenn. Jan. 16, 2014), warrants invocation of the first-to-file doctrine. But, *Malibu Boats* is distinguishable. In that case, the court applied the first-to-file rule, in large part, because bad faith was not at issue as it is in the instant case. Here, the court finds that DigiTrax engaged in forum shopping and procedural fencing, if not bad faith. Where there is clear and unequivocal evidence of forum shopping and procedural fencing, courts can dispense with the first-to-file rule. *See Aeroflex,* 2014 WL 652912 at *6. Therefore, the court finds that the present circumstances differ materially from *Malibu Boats,* and that the nature of DigiTrax's conduct favors dismissal here.

Finally, DigiTrax tries argues that this court should retain jurisdiction because the California litigation "ignores all the issues raised by the contractual relations between the parties and Universal's denial of the relationship and its breach of contract." However, DigiTrax can easily raise those issues as counterclaims or defenses in the California litigation.

In light of the foregoing discussion, the court declines to apply the first-to-file rule in this case and will decline to exercise jurisdiction over this action. The court finds Universal's motion to dismiss well-taken, and it will be **GRANTED**.

The court has considered the other arguments of the parties and finds them to be either unnecessary to address in light of the court's present disposition of this case, or without merit.

### III.  Conclusion

The motion to dismiss, stay or transfer [R. 11] filed by Universal is **GRANTED**, and this action will be **DISMISSED.**  DigiTrax's motion for temporary restraining order and preliminary injunction [R. 19] is **DENIED.**

Enter:

_____
UNITED STATES DISTRICT JUDGE